(83 South. 230)

No. 23612.

LAROSE v. NAQUIN et al.

(Nov. 3, 1919.)

*(Syllabus by the Court.)*

1. NEW TRIAL ☞116(2)—TIME OF APPLICATION NOT AFFECTED BY PREMATURE SIGNING OF JUDGMENT.

A party to a civil action in a district court, desiring to move for a new trial, has three days from the rendition of the judgment in which to do so, and his right in that respect is not affected by the premature signing of the judgment.

145 LA.—33

2. JUDGMENT ☞304—AMENDMENT OF SUBSTANCE AS REQUIRING NEW TRIAL.

Where the judge of the trial court conceives that the judgment rendered by him should be amended, for the correction of an error, not of phraseology, but of substance, and not such an error as is specified in Code Prac. art. 547, he can make the amendment only by granting a new trial, of his own motion, or as applied for, prior to the signing of the judgment, or to the expiration of the delay for signing if the judgment be signed prematurely.

3. APPEAL AND ERROR ☞165 — EXECUTION ☞12—JUDGMENT ☞661—NEW TRIAL ☞163(2)—EFFECT ON JUDGMENT OF GRANT OF NEW TRIAL.

The granting of a new trial has the effect attributed to it by law of setting aside in toto the judgment to which it relates, and which, in contemplation of law, ceases to exist, and cannot thereafter serve as a basis for a plea of res judicata, for an execution, or an appeal.

Appeal from Twenty-Seventh District Court, Parish of Assumption; Philip H. Gilbert, Judge.

Partition suit by Theophile Larose against Clay Naquin and others, in which the property was sold by consent under order of court and the proceeds placed in the hands of the sheriff. Decree entered, fixing rights of parties, and new trial granted as to certain matters, and all the defendants except Mrs. Elvire Naquin appeal. On motion by Mrs. Elvire Naquin and Etienne Naquin, defendants, to dismiss appeal. Dismissed.

See, also, 144 La. 201, 80 South. 254.

A. N. Simmons and Le Blanc & Talbot, all of Napoleonville, and Beattie & Beattie, of Thibodaux, for appellants.

Howell, Wortham & Gianelloni, of Napoleonville, and Lawrence H. Pugh, of Thibodaux, for appellees.

On Motion to Dismiss Appeal.

MONROE, C. J. Plaintiff sues for the partition, by licitation, of a tract of land, alleging that he is the owner of an undivided one-sixth interest therein and that the other

five-sixths interests are owned by Clay Naquin, Lena Naquin, wife of Louis Lasseigne, Etienne Naquin, Clovis Naquin, and Agnes Boudreaux, minor child of Agnes (Naquin) Boudreaux, deceased. He further alleges that Mrs. Elvire Lasseigne, widow of Ernest Naquin, claims to be the owner of an undivided half interest in the land, as the widow in community of her deceased husband, but that her claim is not well founded, and should be so declared. He prays for judgment ordering the sale and partition, and decreeing that Mrs. Elvire Naquin has no interest in the property.

The defendants, with the exception of Mrs. Naquin, filed answers admitting the allegations and joining in the prayer of the petition. Mrs. Naquin, admitting the other allegations and concurring in the prayer for the sale and partition, denies that the other litigants are the owners of the entire tract, and alleges and prays that it be decreed that she owns an undivided half interest therein, by reason of the fact that her husband acquired the entire tract during the existence between them of the community of acquets, and that the half interest devolved upon her, as her individual property, at his death. After some dispute, the property was sold by consent, and the proceeds, amounting to $8,386.98, are in the hands of the sheriff.

On May 8, 1919, the trial court rendered, and signed, a judgment, the opinion and decree reading in part as follows, to wit:

"This cause was regularly taken up and tried, but so many issues were presented and undetermined that the court cannot pass upon all issues for want of data and proof. The only question the court will pass upon is the ownership, vel non, of the property involved and the rights of Mrs. Elvire Lasseigne, widow of Ernest Naquin, and to her paraphernal claim."

It is then held, in affirmance of a judgment previously rendered, that Mrs. Naquin has no claim whatever to any property left by her husband; but that her paraphernal claim, amounting to $3,702.02, with interest from May 7, 1877, subject to a deduction of whatever moneys she may have since received from her husband, should be recognized. And the opinion proceeds:

"All the property belonging to the late Ernest Naquin has been sold under order of this court, and the proceeds thereof are now in the hands of the sheriff, * * * subject to the further orders of this court; the sale of the property being made at the instance of all parties to this suit, and the proceeds to be held subject to claims of all parties for final determination. While the claims of all parties are referred to this suit, there is not sufficient data or proof upon which this court can intelligently fix the exact status of the owners and claimants to be referred to a notary public, as the law directs, for final partition. Wherefore, the court will reserve to all parties and claimants the right to offer evidence in support of their claims, in order that the court may intelligently and finally pass upon those issues in the case.

"For the above reasons and the law and the evidence being in favor thereof."

Then follows the decree, recognizing Clay, Clovis, and Etienne Naquin, Lena Naquin Lasseigne, Agnes Boudreaux, and Theophile Larose as the owners in indivision, in the proportions of one-sixth each—

"of the property sold in these proceedings, the proceeds realized from the sale thereof being the sum of $8,386.98, which is in the hands of the sheriff awaiting final distribution.

"It is further * * * decreed that the claim of Mrs. Elvire Lasseigne, widow of Ernest Naquin, to community rights herein, be * * * denied. It is further decreed that the paraphernal claim of Mrs. Elvire Naquin, * * * amounting to the sum of $3,702.02, with legal interest thereon from the 7th day of May, 1877, subject to any and all moneys received by her from her said husband, to be credited to said claim, be and the same is hereby recognized as due by her said husband."

And the costs are ordered to be paid from the moneys in the hands of the sheriff for the account of these proceedings.

The minutes show that in rendering the judgment the court ordered that "an exten-

sion of ten days be given to all parties" within which to apply for a new trial. Motions for new trial were filed, within three days from the rendition of the judgment, on behalf of plaintiff and of Clay and Clovis Naquin, Mrs. Lena Lasseigne, and the minor Boudreaux, and on May 19th (all the motions being under consideration, as we understand) a new trial was granted by the following ruling as entered on the minutes, to wit:

"The motion for a new trial in this case was taken up, argued, and the court granted it only in so far as it will be allowed to show how much Mrs. Naquin has received from her husband before and since his succession; also to ascertain the date of the recordation of the judgment of Mrs. Naquin."

On May 21st following (no action having been taken in the case in the meanwhile), an appeal was granted "on motion of counsel, except of Theophile Larose and Mrs. Naquin," upon the furnishing of bond in the sum of $100, and was made returnable to this court within 30 days. A bond was given by or on behalf of Clay and Clovis Naquin, Mrs. Lasseigne, and the minor Boudreaux, and on June 19th the appeal was lodged in this court; after which, on August 29th, Mrs. Naquin and Etienne Naquin filed the motion to dismiss which we are now considering, the grounds of the motion being that the motions for new trial having been filed within the legal delay, and having been granted, the judgment (of May 8th) sought to be appealed from was set aside, leaving no judgment from which an appeal will lie.

## Opinion.

[1, 2] The law (Code of Practice, art. 547) declares that:

"Judgments may be amended by the court, until after having been signed, in order 1. To alter the phraseology of the judgment, but not its substance; 2. To correct errors of calculation, as for instance, if more have been given than was demanded, or if the party in fa-

vor of whom the judgment was given had been ordered to pay the costs; 3. Except in the cases above provided, courts cannot alter their judgments; but they may, ex officio, direct a new trial in order to revise their judgments."

It is clear, we think, that in the instant case the judge a quo had in contemplation the possibility of amending his judgment, not to alter its phraseology, but in a matter of substance; not to correct such errors as are specified in paragraph 2 of the article above quoted, but error which fell within the exception following the paragraph; and which according to the terms of the exception, he could not cure save by granting a new trial. He therefore felt constrained to grant the new trial, in order to revise his judgment, as to the error, or possible error, that he perceived, but in so doing overlooked the provisions of other statutes (than the Code of Practice) which determine the effect of granting of a new trial and regulate the proceedings thereupon, and he assumed, himself, to determine that effect and to regulate those proceedings, matters which were beyond his control. Thus Act No. 40 of 1904 declares that—

"All judgments rendered by the district courts shall be signed within three days from the date of the rendition of such judgment, provided that within such delay an application for a new trial may be filed, and the granting of a new trial shall have the effect of setting aside the judgment signed within said three days, provided that judgment in confession may be signed at any time in open court."

Act No. 247 of 1908 is entitled "An Act to regulate new trials * * * and establish the method of procedure therein," and the text is germane to the title. It reads (quoting in part):

"On such new trial it shall not be necessary to resummon the witnesses or hear them anew, if their testimony has once been reduced to writing, but all such testimony and all evidence offered on the former trial shall be considered as already in evidence, provided, the same be filed as part of the record; reserving however

to any party the right to call new witnesses or offer additional evidence, and with the permission of the court to recall any witness for further examination or cross-examination as the case may be," etc.

[3] The effect of the granting of the new trial was therefore the setting aside in toto of the judgment in which the error was thought to be found, and in contemplation of law it ceased to exist, and could not then, and cannot hereafter, afford the basis of a plea of res judicata, an execution, or an appeal.

This appeal taken therefrom is therefore Dismissed.