158 So.2d 248 (1963)
Mrs. Patsy Jo COOPER
v.
William E. COOPER, Jr.
No. 6098.
Court of Appeal of Louisiana, First Circuit.
November 12, 1963.
Rehearing Denied December 16, 1963.
Writ Refused February 7, 1964.
Kelton & Taylor, by Ralph M. Kelton, Baton Rouge, for relator.
Kenneth C. Scullin, Baton Rouge, for respondent.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
*249 ELLIS, Judge.
To insure a proper understanding of this case, it is necessary to review rather completely its procedural history, all of which occurred during the calendar year 1963.
On June 18th William E. Cooper, Jr., the divorced husband of Mrs. Patsy Jo Cooper, filed a rule nisi against his former wife seeking a definition of his visitation rights as to their son of eighteen months.
On July 26 judgment was rendered by Hon. C. Lenton Sartain, Judge of the Family Court for East Baton Rouge Parish, granting Mr. Cooper visitation rights with the child on the first, second and fourth Saturdays of each month between the hours of 2:00 and 4:30 P.M., the visitation to be away from the home of Mrs. Cooper, but limited to East Baton Rouge Parish. The judgment was actually signed July 31st but omitted any mention of restricting the visitation to East Baton Rouge Parish.
On August 2nd Mrs. Cooper filed a motion for a new trial, alleging that the judgment actually signed was not in accordance with the judgment rendered in that visitation was not restricted to the Parish of East Baton Rouge, and that the judgment was contrary to the law and the evidence. The hearing on the motion for a new trial was set for September 9th, but was passed on that date, and passed again on September 16th. On September 19th the Family Court, Hon. C. Lenton Sartain presiding, denied the motion for a new trial, but on the Court's own motion, corrected the judgment to restrict visitation to East Baton Rouge Parish.
On August 6th Mr. Cooper filed a motion and rule for contempt alleging that on August 3 Mrs. Cooper had denied him the right to visit the minor child in accordance with the terms of the judgment signed on the 31st of July. On August 13th Mrs. Cooper's exception of no right and no cause of action filed as to the contempt rule was overruled and she was found to be in contempt of the Family Court, Hon. Elmo E. Lear presiding in the absence of Judge Sartain. Sentencing was delayed until the following day.
On the 13th of August this Court ordered the Family Court for the Parish of East Baton Rouge to stay all proceedings in this case for seven days within which time application for writs of certiorari, mandamus and prohibition must be made, and further staying all proceedings in this case in the Family Court until this Court had time to pass upon the application and either grant or deny the writs. This order was entered on the minutes of Family Court on August 14th.
On August 19th application for writs was filed in this Court and the Family Court, and all counsel of record were notified. On August 22nd a writ of prohibition was issued by this court prohibiting the Family Court from proceeding on the rule for contempt until the motion for a new trial was adjudged. The occasion for this writ was the order of August 22nd issued by the Family Court that Mrs. Cooper be present on August 27th for sentencing pursuant to the conviction on the original contempt rule.
On August 26th Mr. Cooper filed a second contempt rule against Mrs. Cooper, alleging that visitation in accordance with the judgment of July 31st had again been denied him on August 10th and August 24th. That rule was set down for hearing on September 3rd. On August 29th Mrs. Cooper again applied to this Court for a writ of certiorari and asked that the entire record be called up. On that same day a second writ of prohibition was granted by this Court, staying all contempt proceedings with reference to the judgment of July 31st, but specifically authorizing the Family Court to pass on the motion for a new trial. The motion for a new trial was overruled on September 19th.
This Court granted a writ of certiorari on September 21st and the entire case is before this court for review.
*250 In the opinion of this Court, the Family Court was in error when, on August 13th, Mrs. Cooper was found to be in contempt of Court. Unquestionably a motion for a new trial based on substantial grounds had been filed on August 2nd and was not scheduled for hearing until September 9th and was not actually disposed of until September 19th.
It is well established that the timely filing of a motion for a new trial suspends the operation of an otherwise final judgment until the motion is overruled. (Should the motion be granted, this likewise suspends the judgment until a new judgment can be rendered and signed.) McWillie v. Perkins, 20 La.Ann. 168; LaRose v. Naquin 145 La. 1025, 83 So. 230; LaFrenz v. LaBaw, La.App., 21 So.2d 71; Herold v. Jefferson, 172 La. 315, 134 So. 104. Also see LSA-Code of Civil Procedure Articles 3943, 3942 and 2087 which suspend the right of appeal in a custody case where a motion for new trial is timely filed and pending until thirty days from final judgment on the new trial motion.
Despite the ruling of the Family Court that the motion for a new trial was overruled, it was in fact granted for the specific purpose of modifying the judgment of July 31st to restrict visitation to East Baton Rouge Parish. This view is substantiated by the transcript of the lower court's oral reasons for judgment given September 19 from which we quote as follows:
"Upon reviewing this paragraph and again listening to the mechanical recording we ruled at that time that the visitation should in fact be restricted to the Parish of East Baton Rouge, and to this end the application for a rehearing and/or new trial has merit. We hereby amend the written judgment signed on the 31st day of July, 1963, to provide that the visitation shall be limited to the Parish of East Baton Rouge."
Therefore, the judgment of the 31st having been suspended during the pendency of the motion for a new trial, and a new trial having actually been granted, Mrs. Cooper could not be held in contempt for refusing to honor it.
The second contempt rule filed by Mr. Cooper on August 26 can be viewed in no light other than as an harassment of his former wife. At the time this second rule was filed, writs had been applied for and a writ of prohibition had been granted to the knowledge of the Family Court and all counsel of record, preventing the Family Court from proceeding with the first contempt rule. In addition, the second contempt rule is wholly without merit, having been filed prior to September 19, the date on which the motion for a new trial was finally adjudged.
This whole record was called up on a writ of certiorari because this Court was of the opinion that Mrs. Cooper was wrongfully convicted of contempt. It was not the intent of this court to allow a suspensive appeal from the judgment of a lower court relative to custody and visitation of a minor child, and writs of certiorari will not be granted to substitute for a suspensive appeal. However, in the interest of putting an end to litigation and because we deem it to be in the best interest of the child, we will proceed with a determination of the merits of this case.
The basic controversy between the litigants is the right vel non of Mr. Cooper to visit his child away from the home of Mrs. Cooper and without the presence of Mrs. Cooper or a member of her family. Mrs. Cooper contends that her former husband is of a violent character such as would endanger the physical safety of the child.
The Courts will always look to the best interest of the child in cases of this nature. In this case we are impelled to the conclusion that visitation away from the mother's home and out of her presence would not be in the best interest of the child.
*251 Mrs. Cooper related many events in her testimony to show that her former husband was a person of violent temper. She testified that he went into a violent rage over trivial matters, as when she gave some diapers to a needy mother, and as on the occasion that she determined to write for automobile license plates rather than pick them up in person. (It appears one can secure a five digit number rather than a six digit number if the purchase is made in person.)
To these charges Mr. Cooper testified, admitting some slight degree of anger in the first instance, but denying that his conduct approached that of a rage.
It is admitted that Mr. Cooper cursed violently about 7:00 A.M. one Sunday morning when Mrs. Cooper, then three months pregnant, agreed to substitute as a Sunday School teacher pursuant to a telephone call from the Superintendent. Whether Mr. Cooper was cursing the Sunday School Superintendent as contended by him or his wife as contended by her is a distinction without a difference. This is certainly not the normal response of a husband concerned for his wife's delicate condition.
Mrs. Cooper related that on several occasions she had been hurled to the bed by Mr. Cooper who was in a fit of anger. Mr. Cooper describes these events as a slight push and as playful. It is agreed that Mr. Cooper never struck his wife.
Mrs. Cooper testified that her husband, on being told that she intended to leave him, drew a pistol on her, and threatened her life, but that he "calmed down." His version of the event is that his finger was not on the trigger and that he simply held the weapon in the palm of his hand and then replaced it in the drawer. Accepting Mr. Cooper's version as the one most favorable to him, we cannot condone the display of a weapon under such circumstances. Mr. Cooper was obviously enraged or was seeking to intimidate and terrify his wife.
This court is much impressed by Mrs. Cooper's testimony to the effect that Mr. Cooper woke one night and, believing that he heard someone attempting to gain entrance, fired without warning through the outside door of the apartment. In our opinion this was a most reckless act and is not justified by the fact that there had been prowlers in the neighborhood on previous occasions.
Dr. John M. Albea was qualified as an expert in the field of psychiatry by the plaintiff in rule. Dr. Albea's testimony revealed that Mr. Cooper had voluntarily consulted him for treatment. Dr. Albea diagnosed the patient to have a "mild situational problem and * * * symptoms of mild anxiety and mild depression." It was Dr. Albea's opinion that Mr. Cooper was most unlikely to carry out any of his threats.
Mrs. Cooper related two instances when Mr. Cooper's anger had been directed against the child. At age two months Mr. Cooper threatened to whip the child. Later he placed the child in a swing and pushed to such a degree that the child was in danger of being thrown out and injured.
Mr. Cooper is a respectable citizen and holds a responsible position as a counselor employed by one of the departments of the state government. Mrs. Cooper is likewise a responsible citizen, professionally trained and actively engaged in pursuing her profession. In the considered opinion of this court it is not in the best interest of the infant that he be allowed to visit with his father out of the home and presence of the mother and accordingly we overrule the decision of the trial court on that point. The decision of the Trial Court allowing visitation on the first, second and fourth Saturday of each month between the hours of two and four-thirty p. m. is in all other respects affirmed.
It should be pointed out that the question of custody and visitation is never completely closed. When the child becomes older *252 and in need of fatherly guidance and association, it may be that the best interest of the child would require a modification of our present ruling.
Affirmed in part and reversed in part.